I just want to check, you've reserved three minutes for your rebuttal time, is that correct? Yes, ma'am. Yes, sir. Okay. Judge Plager will be with us shortly, but you can proceed. Okay. Basically, of course, you're all familiar with this case, at least to a certain extent. What we're being called upon to do today is to look back a couple of years ago and see whether or not there was a valid oral and or written settlement agreement between Mr. Deloach, our client, and of course the Agency Air Force. This has been a sort of a convoluted type case. It went up on remand to the Merit System Protection Board. They kicked it back for a remand hearing as to what was happening, and that's why we're here today. As you know, there was an initial decision issued by Judge Bartholomew back in September of 2007. What that initial decision said, in essence, was that he found that the Agency decision proper to removal and they were going to terminate Mr. Deloach from any further employment with the Agency. What that presupposed, however, was that there was no valid settlement agreement between the parties because if there had been such a valid settlement agreement between the parties, then Judge Bartholomew never would have been able to reach a decision on the case itself. Well, he actually said, didn't he, that Mr. Deloach, quote, rejected the oral agreement that was reached on August 29, 2007. Well, you can't really tell what is meant by that because if there was, in fact, an oral agreement, then that would have still stopped him from going on and considering the case on its merits. In other words, if you had either an oral or written agreement, he had no authority to proceed to the merits. Maybe he had a misunderstanding or misappreciation of the law and was operating under the belief that you can have an oral agreement and then it can later be rejected. But that's technically exactly what he says. That could be one argument, yes, ma'am. But on the other hand, it could also be the fact that they didn't understand the terms. In other words, the terms may have been discussed, but the agreement was, in essence, that we're not going to make it an official until we read and sign the written settlement agreement between the parties. So to me, you could actually go either way. Okay, so then we have a subsequent hearing and everything by a new A.J., and we have Ms. Barnato who testified that, and she said, the settlement agreement I have in my hand, which is the one in our thing, was read into the record before Mr. Deloach was asked the questions, do you do this by the A.J., do you do this voluntarily, yes, do you understand, yes, those questions. And by the way, it seems like there were only two questions, not three, but anyway. So I listened to it, the hearing. But nonetheless, it seems that he was asked a number of questions, and Ms. Barnato says in her testimony that the settlement agreement, the pieces of paper, were read into the record. Now, it's confusing to me because the pieces of paper, the written agreement, clearly wasn't memorialized and generated until afterwards. There's no record, as I understand it, of what was actually said during that particular conference between Judge Bartholomew and the others. So that's basically what Ms. Barnato happened to say at that particular time. The thing that's weird about it, though- But she says that all of these things were discussed and they were all read into the record, and that he agreed to them all. Tell me, of the settlement agreement, I found your brief a little bit difficult because it said not all the terms had been agreed to orally, but it never identified for me with specificity. Which terms it is that Mr. Deloach- The part of the appeal. Just the appeal. The appeal part, as I understand it, from looking at the testimony between the parties, it was a matter of the appeal. He did not understand that in return for certain things that he would be giving up the right to appeal. For instance- What did he think a settlement meant? Because I'm baffled. The whole notion of settlement is the end of litigation, the termination of a dispute. If it's not explained to him, then obviously he doesn't understand. In other words, the parties all have to understand the terms and conditions of the settlement agreement. And if in fact it had been that way, that there had been a reading into the record of the settlement agreement, then certainly Judge Bartholomew would never have reached his conclusion that he had the right to make the initial decision on the merits. In fact, the thing that's even more strange about it is the fact that after apparently Judge Bartholomew indicated that he had some questions or concerns about it and made his initial decision, that Ms. Varnadoe never went to him or never submitted anything in writing to him saying, Hey, wait a minute. You can't do this because there's a settlement agreement between the parties. You would have certainly thought at that particular time that either Ms. Varnadoe or the agency attorney, Mr. Ward, would have went to the judge and said, Wait a minute. There's a valid settlement agreement between the parties and you have no authority to do it. In fact, the only thing that they did was there was no mention of there being a valid settlement agreement until after we filed the petition for review that went to the Merit System Protection Board. It was only then, basically, that they said, Wait a minute. There's a valid settlement agreement between the parties. Mr. Bergman, let me ask you a question. What do you expect to get out of all of this? That is, let's assume we should agree, for argument purposes, let's assume we agree with you there's no settlement agreement. Your client then is subject now to dismissal, is that right? Yes, there would be another termination hearing. Well, he's already been terminated. Your client's been terminated. The only question, I assume, is whether he would be back, whether he wants to go back before the Merit System Protection Board, isn't that right? Right, and he does want to do that. Although he's been before it once and lost, isn't that correct? Well, without getting into too much evidence, which would be presented, I suppose, at a new hearing, I can relay that if you want me to, basically what his evidence would be. No, I'm puzzled as to what your client thinks he's going to get. He does understand he will simply be back. He does understand he's terminated and he can, absent the settlement agreement, he can then appeal that termination to the MSPB. And he understands what the government's evidence would be. He does have certain evidence to produce, however, that would indicate that he was treated differently than other individuals who had had similar meth problems. Let me ask you, as I understand it, Judge Bartholomew made a determination on the merits, correct? Yes, initial decision. And that went up to the board. And the board said, no, we're not going to consider that. We're not going to look at that. In fact, they denied the petition for review because they said, we're going to send it back to have this jurisdictional issue decided, correct? Well, if we send it back, why would not the correct result be for us to have the board do what it didn't do before, namely consider the petition for review of Judge Bartholomew's decision? Good question. Instead of a new hearing, you're saying a new hearing before the board. Wouldn't the proper thing be to send it back and say to the board, look, you didn't look at the petition for review because you sent it back to see if there was jurisdiction because of whether there had been a settlement. Now we've said there was jurisdiction. You have a decision from the then AJ. Now make a ruling on the petition for review. Wouldn't that be the correct result? If, as Judge Plegg was saying, assuming arguendo, we agree with you. Well, what MSPB has said in essence, as I understand it, is that the initial decision is no good. Why is it no good? Because of the fact that you can only do that if there is an intelligent waiver by Mr. Deloach of his right to have a hearing. And since there was no intelligent waiver of Mr. Deloach to have a hearing itself before the MSPB. No, that isn't what the board said. The board said we don't, we're not clear, at least I thought the board said we're not clear as to whether there was a settlement agreement, which required intelligent consent on your client's part. So I'm sending, we the board are sending it back to the AJ to make sure that there was or was not a settlement agreement. That's correct, but basically what I'd say, if you look at page 35 of the appendix, it said, indeed there's no documentation in the record indicating that the appellant withdrew his hearing request and the administrative judge did not provide the appellant with an opportunity to object to his decision, to issue a decision on the record. So therefore that goes back to answering your particular question. So Judge Shaw's point is correct. I would assume that if we agree with you, what we're going to do is instruct the board to now decide whether the AJ's initial decision is the decision of the board in the absence of any obstacle to the AJ's decision. Is that where you think you are? Well, I think, or are you saying in light of what you just referred to that you would want a hearing? It seems to me that if, it seems to me the appropriate course here would be that if in fact we did agree with you that there was not a knowing waiver, the appropriate thing would be for us to remand it to the board and then to allow you and the agency to make your respective arguments as to what further proceedings, if any, should take place. I would agree probably that that would, what would happen. Given the state of the record, that would, if we agree with you. But you recognize one option might be for the board to simply adopt the AJ's decision as their decision. And then I suppose you'd be back up here again, wouldn't you? Right, because then the question is whether or not there's an intelligent waiver of his right to have a hearing. And of course that's what he's looking for is the right to have the MSPB hearing at the base level. Otherwise I wouldn't be here, obviously, because that's what he has in mind. Because if you look at the terms of the agreement, he's only got really about another six months or so to go on the waiver part. Because as you know there's a waiver of the employment, he can reapply after a certain period of time. Three years. Yeah, it's three years. So in six months you're saying he could go back and apply. He can apply, however that does not necessarily mean that the agency could accept him. It might seem that he's better to wait the six months and go back and apply rather than... Well, I think that's what you have to agree to. What I'm saying is rather than... You know, it's your case. I just wanted to understand whether you understood what was going on. As an aside to that, be aware of what you're asking for, because sometimes you might get it, which is something along what you're saying. But I think in actuality what Mr. Deloach is asking for is a new hearing on the ground. Thank you. We'll give you your full rebuttal. You've had some questions, so you'll have your full... I do have a couple of things to say. You'll have your full three minutes on rebuttal, and we'll hear from the government. Is it Mr. Togo? Yes. Okay, let me make sure I pronounce it correctly. Counsel, this case seems wrought with inconsistencies in the testimony of the government witnesses. Your Honor, the only witnesses at the administrative hearing, I believe, were Ms. Varnadoe, who was the union representative, who was representing Mr. Deloach and Mr. Deloach himself and Mr. Harrell,  and another full-time union representative who Mr. Deloach called his witness. I don't believe there are any government witnesses. Ms. Varnadoe makes all kinds of statements which just don't line up with the dates and with the events that took place. Her testimony about, for example, and I realize you may tell me much of this is irrelevant, but it's very quizzical to me, though. For example, her testimony about how she received the settlement agreement, the written one, and what transpired thereafter and when she transmitted it back to the agency and all those sorts of things seem very suspicious. They don't seem consistent with the other documents and evidence produced that memorialized what occurred in this case. Unfortunately, since there was no record taken at the time of the initial August 29, 2007 hearing, a lot of this is relying on memory and memories may differ. However, the credibility determinations of the administrative judge were that Ms. Varnadoe's testimony was more credible on these issues than that of Mr. Deloach. But her testimony, by the way, which we listened to, the 10-minute long version of it, where she was asked some questions and then was going to stop and the AJ himself decided to ask her a whole stream of questions after that because she hadn't actually said what needed to be said beforehand. I just didn't get very much out of her testimony personally. It was very difficult to listen to. She says, as far as the oral agreement goes, that this document, which I'm holding in my hand, of course we have no idea what document that was and it can't possibly have been the written thing that you all introduced because everyone agrees that was memorialized after the discussion. Yes, that happened after the teleconference. But she says, this document, which I'm holding in my hands, was read into the record with these terms. Well, unfortunately, it's very difficult for us to understand. What document was she referring to? What terms? Because counsel suggests that the appellant did not appreciate at all or ever agree to in the oral discussion the waiver of appeal rights in the case. Now, you and I as lawyers might say, well, that's silly. How could he not appreciate he's settling a case? How does he not understand that's the end of his litigation rights? But, you know, he's not a lawyer and he wasn't represented even by a lawyer at that hearing who would have necessarily explained that to him. And I never heard her specifically testify that he agreed orally to give up his appeal rights. The testimony found by Administrative Judge Uvina was that Mr. Deloge testified he reluctantly agreed to a three-year bar from reemployment at page 46 of the appendix. Correct. Which and then later found that it was inherently improbable that he would agree that he was resigning and giving up the ability to seek reemployment for three years, but at the same time not be giving up his right to appeal his removal. That's pretty much as far as the record goes in terms of Mr. Deloge's affirmative agreement to the oral agreement, but that alone is sufficient. But, counsel, Ms. Farnato did not testify that there was any discussion of him giving up his appeal rights. So there is no affirmative testimony for the AJ to, quote, rely upon to establish that the written document actually memorialized an agreement that was reached earlier. The understanding the AJ has expressed in the opinion was that the agreement was to the voluntary resignation in the three-year bar from reemployment, which the AJ found necessarily would include or would be unreasonable to assume he was not able to understand that he was giving up his appeal rights as part of that. But there was no affirmative discussion of appeal rights as part of the August 29, 2007 teleconferences later developed at the July 2008 hearing. What is the relationship between Mr. Deloge and Ms. Farnato in terms of how does the government view these agency relationships? Is she authorized to act in his behalf? Is that your understanding of how that sets up? Yes. Mr. Deloge executed a designation of representative form, which we included in the supplemental appendix at page 4, and then there's an explanation of the terms of that at supplemental appendix page 6. Ms. Farnato was the union representative and, in essence, was given authority to act as the equivalent of Mr. Deloge's attorney during the proceeding. Attorney, in fact, we often conclude that litigants are bound by the things their counsel does for them, even if sometimes counsel doesn't do exactly what they should have done, at least as we see it post hoc. As I look at the written document, I see that Ms. Farnato signed it. Yes. Presumably on his behalf. Yes. It's curious that it also calls for him to sign it, and that, of course, is what has caused some... That is what has caused this, yes. Now, let me ask you, I find this written settlement, let's assume hypothetically that the settlement agreement is in fact valid and binding on Mr. Deloge. It's a very interesting document, and I'm going to digress from the main focus of this argument because I want you to help me understand something. I'm looking in the red brief, it's page 240 of the appendix, and it's actually numbered page 2 at the back of your brief. I'm with it. You're with me. It says, among other things, the appellant agrees not to seek to reinstate his appeal or to otherwise attempt to challenge or litigate the agency action leading to his removal or this settlement, or any matter or issue reasonably arising therefrom. Further, the appellant agrees to never challenge the validity of this agreement in any administrative or judicial forum. Why do you put such language in a settlement agreement when it apparently doesn't mean anything? Because here they are, challenging the validity of the agreement. Although you didn't put this language in it, Mr. Cotterod. I don't know why the particular language was there. What I do know is that the oral settlement agreement, which was reached at the teleconference, which has independent forces, is meant to memorialize the terms of that agreement. The administrative judge found that that oral agreement was valid, and this later written agreement, which Mr. Deloach later decided not to sign, also was valid because he didn't tell Ms. Varnadoe not to sign it, but there was the oral agreement and this written agreement. I understand that. I'm really asking a slightly different question, which is, assuming a party agrees to never challenge the agreement they just signed, is that a meaningful agreement? And if so, how do you enforce it? It's an interesting question, Your Honor. I'm not sure exactly what the application is here. Well, one application is they're clearly breaching the agreement, assuming this written agreement is valid, hypothetically. And as I understood it, at least the board came out that way, didn't it? Yes, the board found that the form of the administrative judge's decision was valid. Assuming it's valid, then they're bound, presumably, not to challenge the agreement, and I was just wondering what the government does to enforce such things, or is this just nonsense? This part of the agreement, at least, is just nonsense. I'm trying to understand what it is the government thought it was agreeing to. I'm not sure what they were agreeing to with that, although we certainly view the settlement agreement, both the oral and the written, as valid reasons to uphold the board's decision. Yes, this is independent, really, of the terms. We're not bringing an action for breach of contract. This is a procedural question that I'm just puzzled about when I was reading these documents, that's all. I don't think I have much further to add to that question, Your Honor. Okay, thank you. With respect to the distinction between the oral and the written settlement agreement, administrative judge's findings, based upon credibility, were that the oral agreement was valid, and this later written agreement was also valid because And I say that because she, in her testimony, says, and then I inform the agency that I will get them a copy after my client signs it. He wants to think about it first. So it seems to me that she's almost communicating to the agency that we haven't actually agreed, vis-à-vis this written document yet, because she was under the belief that she had to wait to get her client's signature before the whole thing would be wrapped up. So why does that necessarily constitute a binding settlement agreement when it's clear Mr. Deloach had not agreed to sign it, and it's equally clear that Mrs. Varnado seemed to think that his signature was necessary and that she would secure it and send it over the next day after he's had a chance to look at it? I believe the testimony found by the administrative judge was that Mrs. Varnado testified that at that point. She had told him she had already agreed to the agreement, but it was his choice whether to take it to someone else to review it. Nevertheless, finding this that she was authorized to settle the appeal upon his behalf, and he had not told her not to sign on his behalf. Well, he says he did, but there was a credibility determination by the A.J. that that was not true, right? I mean, because he says he did tell her not to sign it. Yes, he found that Mrs. Varnado's testimony was more credible on that issue than Mr. Deloach's. Okay, but suppose he didn't tell her not to sign it, but that as she sat there it was clear that he was not agreeing and she nonetheless signed it. It was clear. Suppose the split second between her signature and him saying, I'm not going to sign it, I want to take it to a lawyer first. Let's reverse that. Let's say the facts of this case were he says, I'm not signing that. I want to take it to a lawyer first. I'm not sure I agree with all that. And then suppose she signed it anyway. Is he bound? At that point, we would probably have a weaker case that she had actual authority at that point, although the terms of the representation agreement, page 6 of the subliminal appendix, require Mr. Deloach to revoke the settlement authority in writing. He never did that even after the fact. Yes, I saw that, but I was sort of flabbergasted at the idea that the government might come in here and argue that if he was screaming up and down saying, no, don't sign it, no, don't sign it, you don't have the authority, that you all would hang your hat on he didn't revoke it in writing. That was sort of what I was wondering if you were going to go to that extreme. We might have a weaker case if he affirmatively and evidence was unanimous. But you'd still be arguing it? You'd still be arguing the case that if he was in her office saying, don't sign it, don't sign it, don't sign it, I don't agree to it, and she signed it, you'd be arguing to me today that? We would argue that if the oral agreement was valid, which it was in this case, if all that there was was a written agreement. You're arguing the written agreement separate from the oral agreement. The oral agreement is irrelevant to whether or not the written agreement constitutes a valid settlement agreement. If all there was was a written agreement and the client was telling the attorney, no way, don't sign this, I don't agree to this, we may come out differently. But in this case, we don't have that based on credibility determinations. We also have a valid oral agreement and buyer's remorse after an oral agreement. Even if you refuse to sign a written agreement, which memorializes that oral agreement as this court founded the Taberzi decision, that later change of mind on the part of a party, refusing to sign a written agreement, memorializing an earlier reached oral agreement, that change of mind after the fact is not sufficient to revoke settlement. What about the fact that the first AJ, who was the one in the middle of all this, concluded that he had rejected the oral agreement and then went ahead and decided the case on the merits? Yes. The terms of that order were confusing, the September 4, 2007 order, because he says, the board has been notified that the appellant has rejected the oral agreement that was reached on August 29, 2007. To read the sentence, we don't have a full explanation of that. That was the purpose of the remand. But even from that sentence, it would imply that there was an oral agreement reached, and later after the fact, it was rejected, which would be inconsistent with this court's precedent that once the oral agreement is reached, it cannot later be, just because of a change of mind, rejected by a party that had voluntarily agreed to it. If anything, the board's remand could be seen as ordering to develop the facts concerning this oral agreement and rejection, which the initial order from Judge Partholomew did not develop. Counsel, I've never really fully understood our standard of review in these cases, because it's arbitrary. We have to find the board's arbitrary capricious and without substantial evidence. Which of those phrases is the applicable one on the issues in this case? Would we have to say the board was being arbitrary and capricious by finding that there was a binding agreement? Is that the way it would work, or is there substantial evidence in the record? Questions? And if so, what is the evidence that needs to be substantial? Help me with our standard of review. In this case, I would say that the substantial evidence is the credibility determination based upon the circumstances of the oral agreement and the execution of the written agreement. And there was substantial evidence to support those findings in this case. And so to find against the government, we would have to say the board was arbitrary and capricious in this? That there was insufficient evidence in the record not to find substantial evidence in support of the board's affirmance of the administrative judge's decision. Thank you. We respectfully request that the court affirm the decision of the board. Thank you, Mr. Bergman. Mr. Bergman, you have your full three minutes. Very quick, Your Honor. In looking at the credibility, as I understand from listening to Judge and watching Judge Jovino's decision, she's saying that she bases her decision on the credibility, that Ms. Varnadoe would have no reason to lie, no prejudice, etc., etc., etc. We would think that in this particular case, Ms. Varnadoe has many things to gain by testifying in what she did. First of all, she's a union representative. If it comes across that she signed a representation that was not true for an employee, that he had stopped her, had told her not to do something, she did it anyway, then they're going to take away that union representative. Also, she may not have liked him. Also, she may have attempted to curry favor with the agency by having other cases before that, thinking that maybe she could get some benefit somewhere else. Counsel, you see that our problem is we can't weigh the evidence. Well, I would think you can. You can weigh credibility. If you look at the entire record, I think the court is. For instance, if we can real quick... are virtually unreviewable on appeal. How do we get around that? But there are cases that do say, Your Honor, that if you have to look at the entire record, and if the entire record does not substantiate that decision as to credibility, then the court does have the ability to go behind it. For instance, when I say that, look at page 72. It says, Ms. Varnadoe testified that she went to Mr. Ward's office to pick up the settlement agreement within one to two hours after the August 29th telephony conference ended. The agreement had the signature says blah, blah, blah, blah, blah. Now, Mr. DeVos, however, said that Mr. Ward had sent the agreement by fax to Mrs. Varnadoe, but she did not have the original. Then look at page 21, which is the prior representations of the government in this particular case. This is Mr. Ward's prior representation to the government on his answering of a prior motion. He said this, Appellant's representative, Elaine Varnadoe, was sent a copy of the settlement agreement that same day. Later that day, Appellant's representative, Elaine Varnadoe, advised the agency that she could not reach appellant. She furnished the agency a copy of the settlement, which she had signed in anticipation of the appellant executing the same. The next day, Appellant rejected the agreement and wanted to take EEO action against the party. Now, this is there. We would submit, I'll cite you some real quick cases, if I may, that you can basically consider that representation in looking at the entire record. We know and understand that she has a duty and obligation to look at the entire record. Let me quickly give you some cases, if I may. Okay. Well, first of all, we'll talk about Austin Brown versus Department of the Navy. You know, Mr. Berman, just give us the site. I'm sorry. Yeah, that'll weigh a little. Okay. Austin Brown versus Department of the Navy, 108 FMSR 237, 2008. What is that? 108 what? That's the merit system protection organization. Oh, MSPR. Yeah. I'm sorry, Your Honor. 108 MSPR. 237. Okay. And then Bonner versus Department of the Navy, which is at 18 MSPR 659, which considers the administrative judge to have to look at the whole file and making the decision. And a similar case, DeMoss versus Heckler at 706 Federal Supp 303. Then I got a couple of quick other cases to say. Stewart versus WACHOWSKI 574 Federal Supplement, second 1074. Wait, wait, wait. I'm sorry. 574. I can't stick with him by the time I finish. No, no, no. Don't worry. You can finish your site. Okay. 574 F Supp, second? Second, 1074. Okay. And what's the last one? Totten versus Merkle, MERKLE at 137 Federal Supp, 1172. And then I'd refer, of course, also the court to rule 801 D2, which of course is the statements made by an attorney, can be considered. Also look at RAP versus OPM, which is a 109 Merit System Protection Board Case 18, which cites Faucher, 96 MSPR 203. Okay. Thank you, Mr. Bergman. Do you have anything else? Quick one. We would respectfully submit to the court that the substantial evidence warrants a reversal or remand back. Thank you.